EdiZONE, LLC
Casey K. McGarvey (4882)
123 East 200 North
Alpine, Utah 84004
(801) 936-1039
casey@edizone.com

Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| EDIZONE, LLC, a Delaware limited liability company ; TNT HOLDINGS, LLC, a Delaware limited liability company; EQUAPRESSURE, LLC, a Delaware limited liability company; WONDERGEL, LLC, a Delaware limited liability company; and GELMAKERS, LLC, a Delaware limited liability company, <br><br>                              Plaintiffs, <br><br> vs. <br><br> CONTINENTAL WESTERN INSURANCE COMPANY, a stock company domiciled in Iowa, <br><br>                              Defendant. | **COMPLAINT** <br><br> Case No.:  2:15-cv-00489 <br><br> Judge Brooke C. Wells |

Plaintiffs, EdiZONE, LLC, TNT Holdings, LLC, EquaPressure, LLC, WonderGel, LLC, and GelMakers, LLC, hereby allege and claim against Defendant, Continental Western Insurance Company, as follows:

PARTIES, JURISDICTION & VENUE

1. Plaintiff, TNT Holdings, LLC (hereafter "TNT"), is a Delaware limited liability company with its principle place of business in Alpine, Utah.

2. Plaintiff, EdiZONE, LLC (hereafter "EdiZONE"), is a Delaware limited liability company with its principle place of business in Alpine, Utah.

3. Plaintiff, EquaPressure, LLC (hereafter "EquaPressure"), is a Delaware limited liability company with its principle place of business in Alpine, Utah.

4. Plaintiff, WonderGel, LLC (hereafter "WonderGel"), is a Delaware limited liability company with its principle place of business in Alpine, Utah.

5. Plaintiff, GelMakers, LLC (hereafter "GelMakers"), was a Delaware limited liability company with its principle place of business in Alpine, Utah.  (EdiZONE, TNT, EquaPressure, WonderGel and GelMakers are extended named insured companies and are collectively referred to hereafter as the "Insureds.")

6. Defendant, Continental Western Insurance Company (hereafter "Continental"), is a stock company domiciled in Urbandale, Iowa with its claim handling office in Meridian, Idaho.

7. Through its agent located in Utah, Continental renewed and entered into a Commercial Lines Policy (Policy No. CWP 2892812 – 22), providing Commercial Property Coverage (CWG1901 01 01) to the Insureds for commercial property located in Alpine, Utah during the period of August 1, 2011 to August 1, 2012, including the Building and Personal Property Coverage Form (CP 00 10 04 02) and Platinum Property Enhancement Endorsement (CL CP 04 55 01 11) (this insurance package hereafter referred to as the "CPC Policy").

8. On July 16, 2012, a fire occurred (hereafter "Covered Cause of Loss") in a covered building at 51 East 200 North, Alpine, Utah causing losses and damages to the building and other covered business personal property (hereafter "Covered Property").

9. A dispute exists between the Insureds and Continental over the amount owed by Continental to the Insureds for losses and damages to Covered Property as a result of the Covered Cause of Loss, and the amount in dispute exceeds $75,000, exclusive of interest and costs.

10. Upon these facts, this Court has personal jurisdiction over Continental.

11. Also, subject matter jurisdiction and venue are founded upon 28 U.S.C. §§ 1332(a), 1391(a).

## GENERAL ALLEGATIONS

A. Introduction

12. Continental does not dispute that the Covered Cause of Loss caused losses and damages to Covered Property, and to date Continental has paid to all insureds a total amount of $530,281.64 toward covered damages.

13. Within this total amount, $390,835.15 has been paid toward the damages to the covered building, and the remainder of $139,446.49 has been paid toward other covered business personal property damages.

14. The limit for such other covered business personal property damages and losses is no less than $380,000, leaving a balance of at least $240,554 available for payout to the Insureds.

15.     The CPC Policy provides for payment of Replacement Cost without deduction for depreciation (hereafter "RC"), in lieu of Actual Cash Value (hereinafter "ACV"), for replaced items of business personal property.

B.     Furniture, Fixtures and Equipment

16.     Continental assigned RC values to some, but not all, damaged and lost furniture, fixtures and equipment, totaling $125,094.31, and then arbitrarily depreciated those values to an ACV for nearly all of those items at rates of 20% to 50% and paid only $86,536.75.

17.     Some items not given RC values should have RC values, some items given RC values should have higher RC values and/or lower depreciation rates, and many items have been replaced or are not subject to depreciation and should not have any reduced ACV.

18.     When these deficiencies are corrected, the recoverable value of replaced and non-replaced furniture, fixtures and equipment is no less than $138,867, and Continental should pay the difference between the $86,537 it has paid for furniture, fixtures and equipment and this amount which difference is at least an additional $52,327.

C.     Prototypes

19.     Continental assigned RC values to prototypes classified by Continental as inventory totaling $63,650, and then depreciated those values to an ACV at the rate of 75% and paid only $15,913.

20.     These prototypes are not inventory, but are used by EdiZONE to demonstrate technologies to potential and existing licensees and other customers, to make additional

prototypes in combination with other technologies and materials, and to further EdiZONE's principle business of research and development.

21. In addition, prototypes never wear out or lose value because they are constantly reused in EdiZONE's research and development business.

22. The prototypes cannot be replaced because of their unique characteristics, and they should not be depreciated at all.

23. Inasmuch as the ACV should be no less than the assigned RC of $63,650 without depreciation, Continental should pay the difference between the $15,912.50 it has paid for prototypes and this amount which difference is at least an additional $47,738.

D. Molds

24. The coverage limit for patterns, molds and dies is $25,000.

25. Continental unilaterally assigned RC values to molds, totaling $52,400, and then paid full RC value of $10,400 for some molds and depreciated other molds to an ACV at the rate of 100% and paid nothing for the loss of those molds.

26. Some of Continental's RC values are too low, and those molds that were depreciated to be worth nothing were not replaced but they still had value and should not have been depreciated to $0.

27. Molds have little depreciation because rather than being discarded they usually are preserved and reused to make prototypes for research and development and customer demonstrations.

28.     The Insureds are entitled to recover the appropriate higher RC for molds that were replaced and a higher ACV than $0 for non-replaced molds derived with a more reasonable depreciation rate of no more than 20%.

29.     When these deficiencies are corrected, the recoverable value of replaced and non-replaced molds is no less than $74,700, and Continental should pay the difference between the $10,400 it has paid for molds up to the policy limit which difference is an additional $14,600.

E.      Signs

30.     The additional coverage limit for signs is $10,000.

31.     Continental unilaterally assigned RC values to signs that are not true RC values but instead are merely cleaning costs, refusing to recognize that the true RC of the signs is much more than the cost for cleaning a destroyed sign, and then Continental paid that cleaning cost in the amount of $6,400.

32.     There are 32 signs, and each cost approximately $7,000, totaling $224,000.

33.     Although the signs were not replaced, they were useable prior to the Covered Cause of Loss, and they should not be depreciated more than 20%.

34.     Inasmuch as the ACV should be no less than $179,200 when using a reasonable depreciation rate of no more than 20%, Continental should pay the difference between the $6,400 it has paid for signs up to the policy limit which difference is an additional $3,600.

F.      Business Income.

35. Additional insurance coverage also is provided for actual losses of business income.

36. Continental has refused to recognize any of the Insured's losses recoverable under this additional coverage.

37. The Insureds incurred within the 12 month period following the Covered Cause of Loss a necessary suspension of their operations during the period of restoration and thereafter until operations could be resumed, causing a loss of net profit before taxes that would have been earned or incurred if no suspension had occurred.

38. The Insureds are small companies and had to divert a substantial number of employees to respond to the Covered Cause of Loss and its consequences before operations could fully resume.

39. The operations of some of the Insureds completely ceased for periods of time.

40. Continental should pay the full amount of the Insureds' actual business losses which have not yet been fully quantified.

G. <u>Extra Expense</u>

41. Additional insurance coverage also is provided for extra expenses.

42. Continental has refused to recognize any of the Insured's losses recoverable under this additional coverage.

43. The Insureds also incurred within the 12 month period following the Covered Cause of Loss extra expenses during the period of restoration that would not have been incurred had the Covered Cause of Loss not occurred in order to minimize the suspension of its operations

and to repair and replace property in order to reduce the amount of loss that otherwise would be payable as extra expenses or business income.

44. Continental should pay the full amount of the Insureds' extra expenses which have not yet been fully quantified.

H. Loss Data Preparation

45. Additional insurance coverage also is provided for loss data preparation costs up to a limit of $25,000.

46. Continental has refused to recognize any of the Insured's losses recoverable under this additional coverage.

47. The Insureds have incurred over $40,000 in expenses paid to an outside consultant to assist in the preparation of loss data required by Continental, and at least that much in value for time spent internally.

48. The Insureds are entitled to recover under this additional coverage the total of the $25,000 limit not paid by Continental.

I. Summary

49. The above amounts, quantified and unquantified, that the Insureds are entitled to receive above what Continental already has paid are owed by Continental under the CPC Policy and should be promptly paid.

50. Continental has not given its final position on what it will pay in settlement of the claim and has expressed its willingness to meet and discuss a resolution of these remaining disputes, but only after receiving additional loss data in advance of that meeting.

51. Continental consistently has demanded quick responses from the Insureds to its requests for loss data but then takes long periods of time to respond to the insured.

52. Continental has not promptly and reasonably investigated and then rejected or settled all of the disputes within the claim, despite the Insureds' efforts to promptly provide loss data.

53. The Insureds requested that Continental agree to extend the three year deadline for filing an action against Continental to recover what continues to be owed under the CPC Policy, while the Insureds gather the additional loss data in response to Continental's current positions, but Continental expressly rejected that request and informed the Insureds that they would have to file this action.

54. Moreover, some of Continental's positions, such as those pertaining to losses and damages well above the policy limits, are unreasonable and taken by Continental in bad faith.

55. Consequently, the Insureds have no other option but to file the instant action against Continental to recover the full amount that Continental owes under the CPC Policy for the damages to Covered Property and other losses sustained because of the Covered Cause of Loss.

56. It was reasonably foreseeable to Continental that after delaying notification to the Insureds of its positions and then refusing to grant an extension of the deadline while they

gathered additional loss date in response to Continental's most recent positions, and by taking positions in bad faith, the Insureds would incur the expense of initiating and pursuing this action.

## CLAIM FOR RELIEF

57. The Insureds incorporate herein their allegations set forth above in this Complaint.

58. The CPC Policy constitutes a binding contract between the Insureds and Continental.

59. The premiums for the CPC Policy were paid and no other performance was required of any insured to bind Continental to its insurance obligations.

60. Continental is in breach of its insurance obligations by not paying all that is owed to the Insureds under the CPC Policy for the covered damages to Covered Property and other covered losses caused by the Covered Cause of Loss, as alleged above.

61. Continental also is in breach of its implied covenant of good faith and fair dealing by not promptly and cooperatively resolving the disputes between the parties and forcing the Insureds to file this action before it has become apparent that the parties will not be able to resolve their disputes without the court's involvement.

62. The Insureds are being damaged by Continental's breach of its insurance obligations and by having to bring this action at this time to compel Continental to cooperate with them in resolving the remaining disputes and to comply with its payment obligations to the Insureds.

63. The Insureds are entitled to recover their direct and consequential damages from Continental.

## PRAYER

WHEREFORE, the Insureds pray for the following relief:

1. A monetary judgment to compensate them for direct and consequential damages allowed by law, including at a minimum the unpaid amounts owed to them under the CPC Policy, the expenses and costs of being forced to initiate this action, and prejudgment interest thereon;

2. Other costs and interest allowed by law; and

3. All such other relief as the Court deems necessary and appropriate in law or equity.

DATED this 9th day of July, 2015.

                                            EdiZONE, LLC

                                            /s/ Casey K. McGarvey
                                            Casey K. McGarvey
                                            Attorney for Plaintiffs